**In the Matter of Herman Eugene GILMORE, a minor child.**

**No. 1066.**

Court of Civil Appeals of Texas, Tyler.

Dec. 1, 1977.

Edith L. James, Office of Dennis L. White, Dallas, for appellant.

William H. Kugle, Jr., Kugle, Douglas & Skelton, James R. Kittles, Athens, for guardian ad litem.

McKAY, Justice.

Suit was brought by the State Department of Public Welfare to terminate the parent-child relationship of Ovide L. Gilmore, father, and Herman Eugene Gilmore, a minor child. The trial court terminated the parental rights of Ovide L. Gilmore, and he brings this appeal.

The petition alleged that the natural father voluntarily left the child alone or in the possession of another, not the parent, and expressed an intent not to return; that he knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; that he engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and he failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. The father answered by general denial, and plead that the child was taken from his home because of the neglect and abuse by the mother of the child, and that the mother had been treated for mental illness since she was 13 years of age, and that on or about the time the child was taken the mother entered Rusk State Hospital; that he, the father, at the time the

child was taken was in financial stress, but that he was now employed earning $130.00 per week and lives with an uncle and aunt, in Dallas, and they are willing to help him provide for the child and that he should have custody.

Trial was before the court, and the court found that "Allie M. Gilmore, the natural mother of the minor child, has executed an unrevoked or irrevocable affidavit of relinquishment of her parental rights; that Ovide L. Gilmore has (a) knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (b) engaged in conduct which endangers the physical or emotional well-being of the child; and (c) failed to support the child in accordance with his ability during a period of one year ending with [sic] six months of the date of the filing of this petition." These findings are grounds for termination of the parent-child relationship as set out in Sec. 15.02, Tex.Family Code Ann. (1975).

Appellant, Ovide L. Gilmore, brings three points as follows:

"POINT OF ERROR 1.

"The Court erred when it found that the Respondent, Ovide L. Gilmore, has '(a) knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;' because he has sought to provide a home after his divorce in which his son will be free of injurious influences and enabled to develop fully and wholesomely.

"POINT OF ERROR 2.

"The Court erred when it found that the Respondent, Ovide L. Gilmore, has '(b) engaged in conduct which endangers the physical or emotional well-being of the child;' because the divorce Petitioner has filed an affidavit after trial in which she admits that Respondent did not abuse the child.

"POINT OF ERROR 3.

"The Court erred when it found that the Respondent, Ovide L. Gilmore, 'failed to support the child in accordance with his ability during a period of one year

ending with [sic] months of the date of the filing of this petition,' because Respondent, although in financial stress at the time the child was taken by the Department, is now employed and earning and living with his aunt and uncle who are prepared to help him care for the child while he works."

■ While it is not clear what Appellant intends to complain about in his Point 1, we will consider it to be an insufficient evidence point. Ovide L. Gilmore and Allie Mae Gilmore were married in January of 1972. He was 24 years of age, and she was 15. The minor child was born August 13, 1973. When the baby was only a few weeks or few months of age the father would come home from work and find the baby alone with diaper unchanged. The mother was committed to mental institutions several times, and the parents were separated many times. Complaints were made against both parents for abusing the child, and on July 18, 1975, the trial court ordered the temporary custody of the child placed with the Department of Public Welfare, and the parents were allowed five months in which to establish a suitable and satisfactory home atmosphere for the child. The child was two years old at that time. At the time of the trial the father had not seen the child for at least 14 months. Allie Mae Gilmore left Ovide in the latter part of 1975, and he had not seen her since.

When custody of the child was placed with the Welfare Department the child was two years of age but could not talk. At the time of trial Ovide Gilmore was living with an uncle and aunt in Dallas and he claimed the aunt would and could care for the child. Ovide testified that Allie Mae beat the child but that he did not. For the 12 to 14 months immediately prior to trial Ovide did not contribute anything to the support of the child even though he was employed most of that period. He testified he was "barely getting by."

Cecil Angel, father of Allie Mae Gilmore, testified he observed bruises on the child several times, but he did not actually see anyone beat the child. He further testified

that Ovide and Allie Mae would often bring the child to his home saying "Herman is sick," but "the only thing wrong with him was he was starving to death and staying filthy"; that his wife would clean the baby and feed him and he would be all right again. He said this happened several times, and he and his wife made a complaint to the Welfare Department. He testified that both parents abused the child badly, and that in his opinion Ovide was not emotionally capable of caring for the child.

The sister of Allie Mae, Joyce Angel, testified that she saw Ovide whip the child hard enough to bruise his body on two occasions, that the child was always dirty—never clean, was fed sour milk, was not changed or bathed unless she did it, and was put to bed in a dirty bed. She said the child cried very much, had diaper rash, and both parents would whip him for crying and he would then cry more.

Another sister of Allie Mae, Diana Angel, testified that she had seen Ovide Gilmore beat the child once or twice for crying because he was wet or hungry. Ed Standerfer, a psychologist with the East Texas Regional Mental Health and Mental Retardation Center, testified that he counseled both Allie Mae and Ovide, and that the child was dirty and wearing dirty clothes, and that in his opinion Ovide was not emotionally capable of caring for the child. Mrs. Starr Fulcher, Director of the Vaughn Speech and Hearing Center of Medical Center Hospital, Tyler, testified the child was deficient in his speech and vocabulary development, and there was a lag between his chronological age and his vocabulary and speech age. Don Carter, case worker for the Welfare Department, testified that in his opinion the parent-child relationship should be terminated because Ovide could not provide a suitable home, and the learning disabilities of the child would not be overcome.

It is apparent, and we so find, that the evidence is ample to sustain the findings of the trial court. Point 1 is overruled.

■ By his Point 2 appellant says that the trial court erred by finding that appellant has "engaged in conduct which endangers the physical or emotional well-being of the child," because the "divorce Petitioner" has filed an affidavit after trial in which she admits that appellant did not abuse the child. The judgment was signed by the trial judge on December 6, 1976. Appellant filed notice of appeal on December 8, 1976. On January 4, 1977, appellant filed a motion for new trial alleging newly discovered evidence, and attached an affidavit of Allie M. Gilmore in which she stated that during the time she lived with Ovide L. Gilmore, he, Ovide, never beat or mistreated or abused the child, Herman, in any way. The motion for new trial was not filed in time; it was filed after notice of appeal was filed, and on the same day the appeal bond was filed. There is nothing in the record to indicate such motion was presented to the trial judge, and, if so, what action, if any, he took. There is nothing for us to review; point of error 2 is overruled. Rule 329b, T.R.C.P.

■ Appellant's Point 3 says that the trial court erred in finding that appellant "failed to support the child in accordance with his ability during a period of one year ending with [sic] six months of the date of the filing of this petition," because appellant is now employed and earning a living with his aunt and uncle who will help him care for the child. It is undisputed in the record that appellant did not contribute anything to the support of the child for 14 months before the petition was filed. The record reveals appellant was employed almost the entire time; the only period he was not employed consisted of short periods when he voluntarily changed from one employer to another. The appellant does not complain that he was unable to furnish some support; his contention is that he can now do so. This point is overruled.

■ While the record in this case produces a sad and tragic story, the primary consideration in a case such as this is the best interest of the child. Sec. 15.02, Tex. Family Code Ann. (1975); *Hall v. Harris County Child Welfare Unit*, 533 S.W.2d 121

(Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). We agree with the trial court that the best interest of the child is best served by termination of the parental rights of the father.

Judgment of the trial court is affirmed.